WOODROW K. GLASS (ADMITTED PRO HAC VICE)
Oklahoma Bar No. 15690
GEOFFREY A. TABOR (ADMITTED PRO HAC VICE)
Oklahoma Bar No. 32880
CHLOE N. GLASS (ADMITTED PRO HAC VICE)
Oklahoma Bar No. 36646
**GLASS & TABOR, LLP**
1601 36th Avenue NW
Norman, OK 73072
Phone: 405-360-9700
Email: geoffrey@glasstaborlaw.com; woody@glasstaborlaw.com; chloe@glasstaborlaw.com

Timothy R. O'Reilly
Nevada Bar No. 8866
**O'REILLY LAW GROUP, LLC**
325 S Maryland Parkway, Suite 100a
Las Vegas, NV 89101
Phone: 702-812-3339
Email: tor@olglaw.com
**ATTORNEYS FOR PLAINTIFF COHEN FULLER**

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| COHEN FULLER,<br><br>**Plaintiff**,<br><br>vs.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>**Defendant**. | Case No. 2:26-cv-01974<br><br>**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING WISNE V. NCAA CLASS CERTIFICATION AND PRELIMINARY INJUNCTION ORDERS DATED JULY 31, 2026** |

### I.    INTRODUCTION AND EXPLANATION OF SUPPLEMENTAL AUTHORITY

Plaintiff COHEN FULLER, ("Plaintiff"), submits this Notice of Supplemental Authority to advise the Court of two new decisions entered on July 31, 2026 in Wisne v. National Collegiate Athletic Association, Case No. 1:26-cv-03063-CNS-KAS, pending in the United States District Court for the District of Colorado [See Ex. 1: Wisne Class Order; Ex. 2: Wisne Preliminary Injunction Order]. On July 31, 2026, Judge Charlotte N. Sweeney (1) granted the Wisne plaintiffs'

1

Motion for Rule 23(b)(2) Class Certification and (2) granted the <u>Wisne</u> plaintiffs' request for preliminary injunctive relief, making class members immediately eligible. Both Orders are directly relevant to the issues before this Court. <u>Wisne</u> concerns the NCAA's recent implementation of its new age-based eligibility model, commonly referred to as the "5-in-5 Rule", and the NCAA's exclusion of student-athletes who began collegiate competition in the 2022-2023 academic year, competed in Division I athletics, completed four seasons under the prior rules by the end of the 2025-2026 academic year, and are now barred from a fifth season. The certified class, which Plaintiff belongs to and has obtained preliminary injunctive relief to compete in the 2026-2027 season, is defined as follows:

> All persons in the United States who began to play in collegiate sports in the 2022-2023 season, competed in NCAA Division I sports, and completed four years of eligibility as defined by the NCAA's prior rules by the conclusion of the 2025-2026 season, and are therefore barred from playing a fifth season due to the NCAA's adoption and immediate implementation of the Five-Year Eligibility Rule.

[Ex. 1: <u>Wisne Class</u> Order at p. 17; Ex. 2: <u>Wisne</u> Preliminary Injunction Order].

As of July 31, 2026, the <u>Wisne</u> Court has (1) certified the above-defined class under Fed. R. Civ. P. 23(b)(2) and (2) entered injunctive relief deeming the class immediately eligible.

Plaintiff's overlapping challenges in this lawsuit through his Sherman Act and state law claims concern (1) his exclusion of two seasons of eligibility under pre-existing JUCO and NAIA eligibility rules and (2) his exclusion for the upcoming 2026-2027 season by way of the 5-in-5 Rule as now ruled on by the <u>Wisne</u> Court.[1] The <u>Wisne</u> Court's Orders not only apply to Plaintiff

---

[1] <u>Wisne</u> was filed after the instant lawsuit. The Complaint herein was filed on June 29, 2026, and <u>Wisne</u> was filed on July 8, 2026.

and supports his 5-in-5 Rule claim herein, but is further evidence of the anticompetitive nature and lack of procompetitive justification of the NCAA's other rules at issue in this lawsuit.

## II.  THE JULY 31, 2026 WISNE CLASS CERTIFICATION ORDER.

In the Class Order, the Wisne Court certified a Rule 23(b)(2) class of Division I athletes affected by the NCAA's new Five-Year Eligibility Rule. The certified class consists of:

> All persons in the United States who began to play in collegiate sports in the 2022-2023 season, competed in NCAA Division I sports, and completed four years of eligibility as defined by the NCAA's prior rules by the conclusion of the 2025-2026 season, and are therefore barred from playing a fifth season due to the NCAA's adoption and immediate implementation of the Five-Year Eligibility Rule.

[Ex. 1: Wisne Class Order at p. 17].

The Class Order is significant because the Court rejected the NCAA's attempt to defeat class treatment through individualized eligibility distinctions regarding the 5-in-5 Rule. On numerosity, the Court found that the case concerned student-athletes' "exclusion from playing another season of Division I athletics due to the NCAA's June 24, 2026 eligibility rule" and agreed that "there are likely thousands of athletes affected by the Rule in a manner that would qualify them for class membership." [Ex. 1: Wisne Class Order at p. 4]. The Court further held that NCAA records and data supplied objective criteria for identifying class members. [Ex. 1: Wisne Class Order at p. 5].

On commonality, the Court held that the common antitrust issue was whether the NCAA's Rule limiting eligibility to play a fifth season was anticompetitive. [Ex. 1: Wisne Class Order at pp. 7-8]. The Court expressly rejected the NCAA's argument that individualized eligibility issues defeated commonality, explaining that factual differences among athletes did not change the

common question driving the claims: "whether the Rule and its implementation is anticompetitive and violative of federal antitrust law." [Ex. 1: Wisne Class Order at p. 8].

On typicality, the Court again rejected the NCAA's reliance on individual athlete differences, including injuries and prior competition outside Division I. [Ex. 1: Wisne Class Order at p. 9]. The Court held that what mattered was not whether every athlete shared identical facts, but whether the claims rested on the same legal or remedial theory. The Court found typicality satisfied because the claims of the named plaintiffs and putative class members were based on the same theory: "that the NCAA has engaged in anticompetitive conduct that has harmed Plaintiffs and class members by limiting their eligibility to compete in a fifth season of collegiate athletics." [Ex. 1: Wisne Class Order at p. 10].

Finally, the Court certified the class under Rule 23(b)(2), finding that the NCAA had acted on grounds generally applicable to the class because all members faced ineligibility to play a fifth season by being subjected to the same Rule. The Court held that a single injunction could remedy the classwide injury because class members' injuries were sufficiently similar and did not require relief differentiated among class members. [Ex. 1: Wisne Class Order at pp. 14-16].

### III.    THE JULY 31, 2026 WISNE PRELIMINARY INJUNCTION ORDER.

At the same time, the Wisne Court granted preliminary injunctive relief to Division I athletes excluded from a fifth season by the NCAA's new Five-Year Eligibility Rule, which includes Plaintiff for his 5-in-5 Rule claims herein. The Court explained at the outset that the plaintiffs had competed in four seasons of collegiate sports, sought to compete in a fifth season while enrolled as full-time students, and were excluded because the NCAA's new rule allowed some athletes to play five seasons within five years but did not allow the Wisne plaintiffs and class members to do so. [Ex. 2: Wisne Preliminary Injunction Order at pp. 1-2]. The Court granted

relief because the implementation of that rule denied them the opportunity to compete in a fifth season and likely violated federal antitrust law. Thus, while Plaintiff has been deemed eligible per the joint operation of the Wisne Orders, there are critically important rulings from the Wisne Court's Preliminary Injunction Order that support Plaintiff's JUCO and NAIA claims also at issue in this lawsuit beyond his 5-in-5 Rule claims.

### A. The Order Recognizes the Five-Year Eligibility Rule as a Commercial Restraint Subject to Antitrust Scrutiny

The Wisne Court rejected the NCAA's threshold argument that time-based eligibility rules are noncommercial and outside the Sherman Act. The Court held that "under the Sherman Act, the Rule is commercial in nature." [Ex. 2: Wisne Preliminary Injunction Order at p. 19]. It reasoned that the eligibility rule at issue restrains the labor of college athletes because the challenged rule prohibited the plaintiffs from playing a fifth season of college sports. The Court relied on recent appellate authority recognizing that NCAA eligibility rules interfere with student-athletes' ability to participate in Division I athletics and profit from that participation. This includes the Elad, Fourqurean, and Robinson discussed by the parties regarding Plaintiff's current request for preliminary injunctive relief. [Ex. 2: Wisne Preliminary Injunction Order at pp. 19-20].

This is important here because Plaintiff's JUCO and NAIA claims likewise target NCAA eligibility rules that restrain his ability to provide athletic labor in the Division I market. Plaintiff's claims do not become noncommercial merely because the restraint is framed as an "eligibility" rule. Wisne confirms that where an eligibility rule restricts an athlete's ability to compete in Division I athletics and pursue associated economic opportunities, the rule is subject to Sherman Act scrutiny.

**B. The Order Accepts the Labor Market for Division I College Athletes as a Relevant Antitrust Market**

The Wisne Court accepted the plaintiffs' relevant market definition: "the labor market for Division I college athletes". [Ex. 2: Wisne Preliminary Injunction Order at p. 21]. The Court found that the plaintiffs supported that market definition with evidence from economist Dr. David Berri, who opined that Division I college sports are a unique labor market distinct from other NCAA divisions, minor league professional sports, and major league professional sports. [Ex. 2: Wisne Preliminary Injunction Order at p. 22]. The Court credited evidence showing significant differences between Division I athletics and other divisions or associations based on revenue, expenses, attendance, and market realities. [Ex. 2: Wisne Preliminary Injunction Order at pp. 23-26].

The Court specifically rejected the NCAA's argument that professional leagues, the NBA, European leagues, or other alternatives defeated the Division I labor market definition. It held that the point was not whether alternatives exist, but whether they are sufficient substitutes for Division I athletics as a matter of market reality and antitrust doctrine. [Ex. 2: Wisne Preliminary Injunction Order at p. 28]. The Court concluded that plaintiffs had defined a product market, labor, and a geographic market. [Ex. 2: Wisne Preliminary Injunction Order at p. 31]. It further found that the evidence demonstrated no good substitutes for Division I athletics. [Ex. 2: Wisne Preliminary Injunction Order at p. 32]. The Court ultimately held that "there is a defined, unique labor market for Division I athletics." [Ex. 2: Wisne Preliminary Injunction Order at p. 33].

These findings clearly support **all** of Plaintiff's claims at issue. Plaintiff likewise seeks access to the Division I labor market, not merely a generalized chance to play football somewhere else. The market harm alleged here is exclusion from Division I competition, including the NIL,

exposure, professional-development, and roster opportunities uniquely associated with that market. Wisne supports treating that market as cognizable and distinct.

### C. The Order Finds That Excluding a Cohort of Athletes from Division I Competition Causes Anticompetitive Effects

The Wisne Court held that the plaintiffs showed a substantial anticompetitive effect. The Court framed the restraint as one that limited the eligibility of the entirety of the class of 2022 from competing in a fifth season, thereby removing this entire class from the labor market and restricting competition within that labor market. [Ex. 2: Wisne Preliminary Injunction Order at p. 34]. The Court rejected the NCAA's roster-cap argument because evidence showed that many Division I teams were below roster caps and that, across teams, there were "thousands of spots below the caps." [Ex. 2: Wisne Preliminary Injunction Order at p. 34]. The Court further rejected the NCAA's assumption that granting relief would necessarily displace other athletes, noting that the NCAA had offered no evidence that each roster was at maximum capacity and that plaintiffs offered contrary evidence. [Ex. 2: Wisne Preliminary Injunction Order at p. 35]. The NCAA makes similar displacement arguments here.

The Court also credited the plaintiffs' wage-suppression theory. It noted that although the House settlement imposes a revenue-sharing cap, third-party NIL money is not capped, and removing labor restraints could allow the "pool of NIL money" to increase. [Ex. 2: Wisne Preliminary Injunction Order at p. 35]. The Court concluded that the challenged rule reduced the number of eligible Division I athletes who could generate uncapped NIL wages, thereby reducing money flowing through the Division I labor market. [Ex. 2: Wisne Preliminary Injunction Order at p. 36].

The Court held that plaintiffs had shown that the challenged conduct would reduce output, decrease wages, and decrease quality in the relevant market by excluding qualified, seasoned athletes from competition. [Ex. 2: Wisne Preliminary Injunction Order at p. 36]. It further held that competition is harmed when plaintiffs and class members are prohibited from even being eligible to compete for a fifth season, which can further depress uncapped NIL wages. [Ex. 2: Wisne Preliminary Injunction Order at p. 37]. This reasoning strongly supports Plaintiff. Plaintiff alleges the NCAA's JUCO and NAIA eligibility rules exclude him from the Division I football labor market despite his continued ability and desire to compete. Like the Wisne plaintiffs, Plaintiff is not asking the Court to create a new market or force the NCAA to invent a new form of competition. He seeks to prevent the NCAA from enforcing eligibility restraints that remove qualified athletes from Division I competition and the associated NIL and professional-development market. Wisne supports the conclusion that such exclusion produces cognizable anticompetitive harm.

**D. The Order Rejects the NCAA's Claimed Procompetitive Justification That Excluding Older or Experienced Athletes Creates Opportunities for Others**

The NCAA argued in Wisne that eligibility limits preserve opportunities for incoming high school students by creating an "exiting class" of athletes and opening roster spots. [Ex. 2: Wisne Preliminary Injunction Order at p. 38]. The Court rejected that argument as resting on a flawed premise: "[t]hat *excluding* athletes from the labor market is actually procompetitive." [Id.] (emphasis in original). The Court held that antitrust law does not endorse the idea that reducing laborers in a market is procompetitive. [Ex. 2: Wisne Preliminary Injunction Order at pp. 38-39].

The Court further characterized the NCAA's justification as equitable rather than procompetitive, and that whether relief might have consequences for athletes "counting on roster spots" did not supply a procompetitive rationale for the restraint. [Ex. 2: Wisne Preliminary

Injunction Order at pp. 39-40]. Because the NCAA failed to establish a procompetitive rationale, the court found that plaintiffs had shown a likelihood of success on the merits. [Ex. 2: Wisne Preliminary Injunction Order at pp. 40-41].

This part of Wisne is particularly instructive. The NCAA often defends eligibility restrictions by invoking fairness, roster management, competitive balance, or opportunities for younger athletes. However, Wisne holds that those arguments do not automatically satisfy antitrust scrutiny. In Plaintiff's case, the NCAA's refusal to allow him to compete because of prior JUCO and NAIA seasons, and its refusal to extend the new 5-in-5 framework to him, similarly removes an experienced athlete from the market. Wisne supports the argument that excluding Plaintiff to create room for others is not a procompetitive justification under the Sherman Act.

**E. The Order Finds That Waivers or Extension Relief Are Less Restrictive Alternatives**

The Wisne Court also found that, even assuming the NCAA had identified a procompetitive justification, the plaintiffs showed less restrictive alternatives. The plaintiffs argued they should be treated like other athletes under the Rule and be eligible for a fifth season of competition. The Court accepted that position and found that waivers or an additional year of eligibility were a practical alternative consistent with the NCAA's existing framework. [Ex. 2: Wisne Preliminary Injunction Order at p. 43].

Critically, the Court relied on the NCAA's own evidence that the Five-Year Rule can be extended through "various forms of waivers" in the NCAA bylaws, including "*extension of eligibility waivers*, hardship waivers, season of competition waivers, and legislative relief waivers." [Ex. 2: Wisne Preliminary Injunction Order at p. 43] (emphasis in original). The Court held that the NCAA's waiver system undermined its all-or-nothing argument and its claim that

granting relief would make rule administration impossible or cause chaos. Indeed, the Court found that waivers would eliminate the anticompetitive harm and appeared feasible under current NCAA bylaws. [Ex. 2: Wisne Preliminary Injunction Order at p. 44].

This reasoning applies directly to the JUCO and NAIA claims here. Wisne confirms that individualized waiver or extension relief is a viable less restrictive alternative where a categorical eligibility rule otherwise excludes an athlete from the Division I market. It also supports Plaintiff's argument that the NCAA cannot invoke administrative burden or "chaos" while simultaneously operating a waiver system capable of granting eligibility relief.

**F. The Order Finds Irreparable Harm from Losing a Season of College Athletics**

The Wisne Court held that the plaintiffs established irreparable harm because courts have repeatedly found that college students suffer irreparable harm when denied the opportunity to play sports. [Ex. 2: Wisne Preliminary Injunction Order at pp. 45-46]. The Court found that plaintiffs faced "the loss of a season" and exclusion from teams for which they might otherwise be eligible. [Ex. 2: Wisne Preliminary Injunction Order at p. 46]. The Court held that the inability to play in the upcoming season could not be compensated after the fact by money damages. [Ex. 2: Wisne Preliminary Injunction Order at p. 46]. Also important in the irreparable harm analysis was that the Court further explained that lost NIL compensation did not displace the fundamental irreparable harm caused by the initial exclusion from competition. [Ex. 2: Wisne Preliminary Injunction Order at pp. 46-47]. These findings are directly applicable here.

**G. The Order Finds the Balance of Equities and Public Interest Favor Injunctive Relief Against NCAA Eligibility Restraints**

The Wisne Court held that the balance of equities favored the athletes because they faced permanent loss of their final season, while the NCAA's claimed harms were unsupported by

evidence. [Ex. 2: <u>Wisne</u> Preliminary Injunction Order at pp. 47-48]. The Court found the harms to the NCAA "much less severe" than the irreparable harm facing the plaintiffs. [Ex. 2: <u>Wisne</u> Preliminary Injunction Order at p. 48]. It also found that the public interest favored relief because preventing anticompetitive conduct and ensuring compliance with federal antitrust law serves the public interest. [Ex. 2: <u>Wisne</u> Preliminary Injunction Order at p. 49].

Those findings support the same equitable analysis here. Plaintiff faces the loss of unique and time-sensitive seasons of Division I football. The NCAA's contrary interests, including roster management, waiver administration, and rule uniformity, are not comparable harms. <u>Wisne</u> confirms that the public interest favors preventing anticompetitive eligibility restraints from excluding athletes from Division I competition.

**H. The <u>Wisne</u> Court Rejected the NCAA's Argument That the <u>House</u> Settlement Bars Injunctive Relief Claims Challenging NCAA Eligibility Rules**

The <u>Wisne</u> Preliminary Injunction Order is also important because the NCAA raised the same threshold defense it raises in this case: that the <u>House</u> settlement bars student-athletes' claims for eligibility-related injunctive relief. **The <u>Wisne</u> court squarely rejected this argument.**

Similarly to the instant case, in <u>Wisne</u>, the NCAA argued that the plaintiffs were members of the settlement class from <u>In re College Athlete NIL Litigation</u>, commonly referred to as <u>House</u>, and that the approved settlement released claims broad enough to foreclose the athletes' request for injunctive relief. The <u>Wisne</u> plaintiffs disagreed, arguing that the plain terms of the settlement did not release their claims challenging the NCAA's new Five-Year Eligibility Rule. The Court agreed with the plaintiffs. [Ex. 2: <u>Wisne</u> Preliminary Injunction Order at p. 14].

The Court began with ordinary release principles, explaining that release is an affirmative defense and that courts determine the scope of a settlement release by looking first to the settlement agreement itself and applying ordinary contract-interpretation principles. [Ex. 2: Wisne Preliminary Injunction Order at pp. 14-15]. The Court then reviewed the relevant House settlement language. It accepted, for purposes of the analysis, that the Wisne plaintiffs fell within the House settlement's "Injunctive Relief Class," defined as "[a]ll student-athletes who compete on, competed on, or will compete on a Division I athletic team at any time between June 15, 2020 through the end of the Injunctive Relief Settlement Term." [Ex. 2: Wisne Preliminary Injunction Order at p. 15]. However, the Court held that class membership did not end the inquiry because the critical question was whether the released claims actually covered the new eligibility challenge.

The Court held they did not. The House settlement's "Released Injunctive Class Claims" reached claims concerning NCAA and conference rules regarding the following: monetary benefits that may be provided to student-athletes; roster and scholarship limits agreed to in the House injunctive-relief settlement; and subjects addressed by "Related Injunctive Relief NCAA & Conference Rules." [Ex. 2: Wisne Preliminary Injunction Order at p. 15]. The Court then analyzed those "Related Injunctive Relief NCAA & Conference Rules" and explained that they concerned NIL payments, NIL agreements, compensation and benefits, progress-toward-degree requirements, rules about retaining or regaining eligibility in connection with noncompliant NIL agreements, and related anti-circumvention provisions. [Ex. 2: Wisne Preliminary Injunction Order at pp. 16-17].

After reviewing that language, the Court made its key finding: "[t]hese released claims, on their face, concern NIL agreements, negotiation, and compensation. They do not concern the

Rule and its eligibility changes that Plaintiffs challenge here." [Ex. 2: Wisne Preliminary Injunction Order at p. 16]. The Court acknowledged that one House provision referred to rules governing "the number of seasons/length of time student-athletes are eligible to receive benefits," but it rejected the NCAA's effort to stretch that language to bar the eligibility challenge. [Ex. 2: Wisne Preliminary Injunction Order at p. 17]. The Court further reasoned that the "benefits" referenced in that provision meant monetary benefits related to NIL, including rules capping how many years a student-athlete may receive payments, not eligibility to compete. [Ex. 2: Wisne Preliminary Injunction Order at p. 17].

The Court further emphasized a timing point that is significant to 5-in-5 claims: the challenged Five-Year Eligibility Rule was adopted after the House settlement had been approved and finalized. [Ex. 2: Wisne Preliminary Injunction Order at p. 17]. The House release applied to certain claims that were raised or could have been raised before final approval or during the settlement term based on rules existing at the time of preliminary approval. Because the Wisne plaintiffs challenged a new eligibility rule adopted after that point, the Court found this as yet another basis to find that the House settlement did not release their claims. [Id.].

This reasoning is directly applicable here. The NCAA cannot transform the House settlement, which resolved NIL compensation and related benefit issues, into a blanket immunity provision for every future antitrust challenge to NCAA eligibility restraints. As Wisne recognized, class membership in House does not mean every later claim against the NCAA is released. The operative question is whether the specific claim falls within the released claims. [Ex. 2: Wisne Preliminary Injunction Order at p. 15]. Most sweeping and most critically, the Wisne Court held that eligibility challenges to the NCAA's new Five-Year Eligibility Rule do not fall within the House release because the released claims concern NIL agreements, negotiation, compensation,

benefits, roster and scholarship limits, and related rules, not the right to compete in an additional season under a later-adopted eligibility rule. [Ex. 2: Wisne Preliminary Injunction Order at p. 16].

This conclusion completely undermines the NCAA's House defense in this case. Plaintiff's eligibility claims are not an attempt to relitigate the NIL compensation structure approved in House. Plaintiff challenges the NCAA's enforcement of eligibility restraints that bar him from Division I competition, including the NCAA's treatment of his JUCO and NAIA participation and its refusal to grant him a fifth year under the new 5-in-5 eligibility framework. The same distinction controlled in Wisne: claims regarding the legality of an eligibility rule that excludes athletes from competition are not released merely because the athlete also seeks access to NIL opportunities that flow from being allowed to compete. [See Ex. 2: Wisne Preliminary Injunction Order at pp. 16-17].

The Wisne ruling is especially powerful because the NCAA made the House argument before another federal court in a materially similar posture, seeking to defeat preliminary injunctive relief at the same threshold. The Wisne Court rejected that defense before reaching the merits and then proceeded to hold that the plaintiffs were likely to succeed on their Sherman Act claims. This Court should likewise reject the NCAA's attempt to use House as a procedural bar to Plaintiff's eligibility-based antitrust claims. The House settlement does not release challenges to NCAA eligibility rules that exclude athletes from Division I competition.

**IV.   THE CURRENT WISNE DECISIONS DO NOT NEGATE PLAINTIFF'S "IRREPERABLE HARM" POSITION.**

Plaintiff would briefly note that while he is technically eligible according to a current plain reading of the current Wisne Orders, this can change at any moment. Over the weekend, **the NCAA instantly made it known that it will quickly seek clarification and reversal of the**

**Wisne Orders**. Indeed, the NCAA has already publicly stated that the <u>Wisne</u> Court "is egregiously wrong" in a letter from Chief Legal Officer Scott Bearby on August 1, 2026. Thus, the current posture of <u>Wisne</u> does not negate any of Plaintiff's injunctive relief claims herein.

The case of <u>California v. Health & Hum. Servs.</u>, 390 F. Supp. 3d 1061 (N.D. Cal. 2019) is instructive. In that case, the federal government argued that the court should not enter a "duplicative injunction" because a nationwide injunction already existed in a parallel proceeding in the Third Circuit (the Eastern District of Pennsylvania). The Court squarely rejected this argument. **It held that the existence of another injunction, particularly one in a different circuit that could be overturned or limited at any time**, did not negate the plaintiff's claimed irreparable harm. *See* <u>id</u>. at 1066. *See also* <u>Sunny-Odio v. Trump</u>, No. 26-CV-04816-RFL, 2026 WL 1763854, at *2 (N.D. Cal. June 18, 2026); <u>Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.</u>, 485 F. Supp. 3d 1, 60 (D.D.C. 2020); <u>Regeneron Pharms., Inc. v. United States Dep't of Health & Hum. Servs.</u>, 510 F. Supp. 3d 29, 41 (S.D.N.Y. 2020).

For these reasons, Plaintiff requests that this matter stay on schedule as previously ordered and be handled on an emergency and expedited basis.

V.      **INDEX OF EXHIBITS**

a.  <u>Wisne v. Nat'l Collegiate Athletic Ass'n</u>, Case No. 1:26-cv-03063-CNS-KAS (D. Colo. July 31, 2026): Order Certifying Class; and

b.  <u>Wisne v. Nat'l Collegiate Athletic Ass'n</u>, Case No. 1:26-cv-03063-CNS-KAS (D. Colo. July 31, 2026): Order Granting Preliminary Injunctive Relief.

VI.     **CONCLUSION AND RELIEF REQUESTED**

Plaintiff is a member of the class definition, *supra* by way of his 5-in-5 claims that constitute a portion of his lawsuit filed here. Furthermore, Plaintiff has been deemed immediately

eligible by way of the two <u>Wisne</u> decisions regarding the 5-in-5 issue. For the reasons stated herein, Plaintiff respectfully requests that this Court take notice of the July 31, 2026 <u>Wisne</u> Orders, further deem Plaintiff immediately eligible as outlined by his claims in the Complaint [Doc. 2], and grant his Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 5].

DATED AUGUST 4, 2026.

Respectfully Submitted:

**/s/ Geoffrey A. Tabor**
Woodrow K. Glass, Oklahoma Bar. No. 15690
Geoffrey A. Tabor, Oklahoma Bar. No. 32880
Chloe N. Glass, Oklahoma Bar. No. 36646
(ADMITTED PRO HAC VICE)
**GLASS & TABOR, LLP**
1601 36th Ave. NW
Norman, OK 73072
Phone: 405-360-9700
woody@glasstaborlaw.com
geoffrey@glasstaborlaw.com
chloe@glasstaborlaw.com

**/s/ Timothy R. O'Reilly**
Timothy R. O'Reilly, Nevada Bar No. 8866
**O'REILLY LAW GROUP, LLC**
325 S Maryland Parkway, Suite 100a
Las Vegas, NV 89101
Phone: 702-812-3339
tor@olglaw.com
**ATTORNEYS FOR PLAINTIFF**
**ATTORNEY LIEN CLAIMED**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the date this document was filed with the Court's CM/ECF system, I caused it to be served to all persons designated by the parties that have appeared of record in this matter.

<u>**/s/ Geoffrey A. Tabor**</u>
Geoffrey A. Tabor, Oklahoma Bar. No. 32880