John M. Naylor
Nevada Bar No. 5435
Kelly M. Scarborough
Nevada Bar No. 16979
NAYLOR & BRASTER
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135
(T) (702) 420-7000
(F) (702) 420-7001
jnaylor@nblawnv.com
kscarborough@nblawnv.com

*Attorneys for Defendant*
*National Collegiate Athletic Association*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

COHEN FULLER,

Plaintiff,

vs.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,

Defendant.

Case No. 2:26-CV-01974-APG-BW

**MOTION OF DEFENDANT NCAA TO TRANSFER TO THE MIDDLE DISTRICT OF TENNESSEE**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 1

A. The Tennessee Court Is Well Familiar With Antitrust Challenges Against the NCAA and Related Requests for Injunctive Relief .......... 1

B. The *Patterson* Lawsuit Proposes a Rule 23(b)(2) Injunctive Relief Class .......... 3

C. Plaintiff's Lawsuit Raises the Same Issues as *Patterson*, and He Is Within the Proposed Injunctive Relief Class .......... 4

III. ARGUMENT .......... 5

A. The First-to-File Rule Applies to Plaintiff's Lawsuit .......... 5

1. Chronology: This Action was Filed After the *Patterson* Class Action .......... 6

2. Same Parties: Plaintiff Is a Putative Class Member in the *Patterson* Class Action—and Cannot Opt Out if That Class Is Certified .......... 6

3. The Issues Are Substantially Similar. .......... 7

B. The Court Should Transfer This Matter to the Tennessee Court to Prevent Duplicative Litigation and Promote Judicial Efficiency .......... 8

IV. CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adoma v. Univ. of Phx., Inc.*,
711 F. Supp. 2d 1142 (E.D. Cal. 2010)) ....................7

*Alltrade, Inc. v. Uniweld Prods.*,
946 F.2d 622, 623 (9th Cir. 1991) ....................8

*Bellamy v. NCAA*,
No. 3:25-cv-00750 (M.D. Tenn. filed July 3, 2025).................... *passim*

*Booker v. Am. Honda Motor Co.*,
No. 2:20-cv-05166-SVW, 246365, 2020 WL 7263538, at *3 (C.D. Cal. Oct. 20, 2020) ....................7

*Boyd v. NCAA*,
No. 3:25-cv-00729 (M.D. Tenn. filed June 30, 2025) .................... *passim*

*Church of Scientology of Cal. v. U.S. Dep't of Army*,
611 F.2d 738, (9th Cir. 1979) ....................5, 10

*Clarke v. Providence St. Joseph Health*,
No. 2:24-CV-0434-TOR, 2025 WL 1920412 (E.D. Wash. July 11, 2025)....................7

*CRU Acquisition Grp., LLC v. Mykey Tech., Inc.*,
No. 3:11-CV-05743, 2012 WL 441293 (W.D. Wash. Feb. 10, 2012)....................6

*Energy Enhancement Sys., Ltd. Liab. Co. v. Light Sys.*,
No. 3:26-cv-00163-MMD-CLB, 2026 WL 926773 (D. Nev. Apr. 6, 2026)....................10

*Fourqurean v. NCAA*,
143 F.4th 859 (7th Cir. 2025) ....................9

*Frank v. United Airlines, Inc.*,
216 F.3d 845 (9th Cir. 2000) ....................7

*Fremont Emergency Servs. (Scherr), Ltd. v. UnitedHealthcare Ins. Co.*,
No. 2:22-cv-01118-CDS-BNW, 2023 WL 8556229 (D. Nev. Dec. 8, 2023) ....................8, 9, 10

*Fuller v. NCAA*,
No. 2:26-cv-00110 (D. Nev. Jan. 20, 2026), ECF No. 1-1 ....................4

*Keen v. Omni Limousine*,
No. 2:16-cv-01903-JCM-GWF, 2016 WL 6828199 (D. Nev. Nov. 18, 2016) ....................6, 7

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*,
787 F.3d 1237 (9th Cir. 2015) ....................5, 6, 7

*Kohn Law Grp.*,
787 F.3d at 1240 ....................8

*Manu v. NCAA*,
No. 2:25-cv-01956, 2025 WL 3140840 (W.D. Wash. Nov. 10, 2025)....................1, 5, 8

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*,
2012 WL 3277222, (N.D. Cal. Aug. 9, 2012) ....................8

*NCAA v. Alston*,
594 U.S. 69, (2021)....................9

*Nesbit v. Fornaro*,
No. 2:11-cv-00092-PMP-GWF, 2011 WL 1869917 (D. Nev. Mar. 31, 2011) ....................6, 7

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir. 1982) ....................5

*Packwood v. Cty. of Contra Costa*,
No. 3:22-cv-0219-ART-CLB, 2023 WL 2349390 (D. Nev. Mar. 2, 2023)....................9

*Patterson v. NCAA*,
No. 3:25-cv-00994 (M.D. Tenn. Sep. 2, 2025).................... *passim*

*Pavia v. NCAA*,
No. 3:24-cv-01336 (M.D. Tenn. filed Nov. 8, 2024).................... *passim*

*wedi Corp. v. Hydroblok Grant Int'l Ltd.*,
No. 2:22-cv-00457, 2023 WL 2610164, (D. Nev. Mar. 23, 2023)....................6, 7, 9, 10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................7

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
967 F. Supp. 2d 1289 (N.D. Cal. 2013) ....................5, 6, 10

**Statutes**

28 U.S.C. § 1404(a) ....................5, 10

**Rules**

Fed. R. Civ. P. 23....................7

Fed. R. Civ. P. 23(b)(2)....................3, 7

Fed. R. Civ. P. 23(b)(3)....................3

**Other Authorities**

Sherman Antitrust Act of 1890 ........................................ 2, 3, 4, 8

Tennessee Trade Practices Act ........................................ 2

# I. INTRODUCTION

Defendant National Collegiate Athletic Association (the "NCAA") requests that the Court apply the "first-to-file rule" and transfer this action to the Middle District of Tennessee (the "Tennessee Court"), where Plaintiff is a putative injunctive relief class member in the earlier-filed lawsuit *Patterson v. NCAA*, No. 3:25-cv-00994 (M.D. Tenn. Sep. 2, 2025) ("the *Patterson* Class Action").[1]

Plaintiff is not the first student-athlete to sue the NCAA seeking to participate in extra seasons of collegiate sports based on the allegedly anticompetitive nature of the NCAA's eligibility rules. In addition to the *Patterson* Class Action, other student-athletes have pending suits in Tennessee seeking injunctive relief like Plaintiff. *See Pavia v. NCAA*, No. 3:24-cv-01336 (M.D. Tenn. filed Nov. 8, 2024); *Boyd v. NCAA*, No. 3:25-cv-00729 (M.D. Tenn. filed June 30, 2025); and *Bellamy v. NCAA*, No. 3:25-cv-00750 (M.D. Tenn. filed July 3, 2025). Allowing Plaintiff's action to proceed in this Court while four related actions—including a class action in which Plaintiff is a putative class member with no opt-out rights—are pending in another district (and assigned to the same judge) would be a significant waste of judicial resources and risk inconsistent rulings on common questions of law and fact. Another court in this Circuit has found transfer appropriate in similar circumstances. *See Manu v. NCAA*, No. 2:25-cv-01956, 2025 WL 3140840 (W.D. Wash. Nov. 10, 2025) (transferring NCAA-eligibility-rules case to Middle District of Tennessee). Judicial economy will be served by transferring this case to the Middle District of Tennessee.

# II. FACTUAL BACKGROUND

Plaintiff's claim is one of over one hundred challenges across the country to the NCAA's eligibility rules. The Tennessee Court is presiding over a particularly concentrated group of these cases, including a pending class action.

## A. The Tennessee Court Is Well Familiar With Antitrust Challenges Against the NCAA and Related Requests for Injunctive Relief

On August 11, 2024, Diego Pavia sued the NCAA alleging the NCAA's eligibility rules violate

---

[1] The NCAA has moved the Judicial Panel on Multidistrict Litigation to consolidate this and other pending federal lawsuits raising antitrust challenges against the NCAA's eligibility rules. *See* MDL No. 3198 at 1. Responses to the NCAA's motion are due to the JPML on August 26, 2026. *Id.*

the Sherman Antitrust Act of 1890 (the "Sherman Act"). *Pavia v. NCAA*, 760 F. Supp. 3d 527, 536 (M.D. Tenn. 2024). He sought a TRO, which the court denied four days after it was filed. *Pavia*, ECF Nos. 8, 15. On December 18, 2024, the court granted a motion for a preliminary injunction that prohibited the NCAA from enforcing its eligibility rules to prevent Pavia from playing NCAA Division I football during the 2025–2026 season. *Pavia*, 760 F. Supp. 3d at 545. The U.S. Court of Appeals for the Sixth Circuit recently dismissed the NCAA's appeal from the preliminary injunction as moot. *Pavia v. NCAA*, 154 F.4th 407, 415 (6th Cir. 2025). While Diego Pavia himself has moved on from his collegiate football career, he and other plaintiffs continue to litigate *Pavia* in the district court. The case is set for a bench trial on February 2, 2027. *Pavia*, ECF No. 99.

On June 30, 2025, Derrin Boyd sued the NCAA alleging the NCAA's eligibility rules violate the Sherman Act and the Tennessee Trade Practices Act. *Boyd*, ECF No. 1. He requested the court enjoin the NCAA from enforcing its eligibility rules so he can play collegiate basketball during the 2025–2026 season. *Id.* The Tennessee Court denied his motion for a temporary restraining order on July 3, 2025 (two days after it was filed), *id.* ECF Nos. 11, 16, and denied his motion for a preliminary injunction on August 22, 2025, *id.* ECF No. 43. On October 22, 2025, the *Boyd* plaintiffs filed a first amended complaint, *id.* ECF No. 59, and the NCAA's motion to dismiss is still pending the court's review, *id.* ECF No. 62. Otherwise, *Boyd* is set for a jury trial on March 30, 2027. *Id.* ECF No. 58.

On July 3, 2025, multiple plaintiffs in *Bellamy* sued the NCAA, also alleging the NCAA's eligibility rules violate the Sherman Act. *Bellamy*, ECF No. 1. The *Bellamy* plaintiffs requested the court enjoin the NCAA from enforcing its eligibility rules so they can play NCAA Division I football during the 2025–2026 season. A little over a month later, the Tennessee Court denied the *Bellamy* plaintiffs' multiple motions for a temporary restraining order and preliminary injunction. *Id.* ECF No. 39. The Tennessee Court ultimately consolidated *Bellamy* with *Pavia*. *Bellamy*, ECF No. 49.

As further discussed *infra*, on September 2, 2025, a group of student-athlete plaintiffs filed the *Patterson* Class Action against the NCAA alleging the NCAA's eligibility rules violate the Sherman Act. *Patterson*, ECF No. 1.

In February 2026, the Tennessee Court consolidated *Pavia*, *Boyd*, and *Patterson* for discovery purposes only. *Patterson*, ECF No. 92; *Pavia*, ECF No. 96; *Boyd*, ECF No. 67.

Plaintiff and the plaintiffs in all four Tennessee cases challenge aspects of the NCAA's Five-Year Rule. *See* Dkt. No. 3 ¶ 98 (alleging that "[b]y counting JUCO and NAIA participation against the NCAA's five-year eligibility clock and subjecting JUCO and NAIA athletes to these standards, the NCAA creates disparities and artificially restricts the career mobility of JUCO and NAIA athletes"); *Pavia*, 760 F. Supp. 3d at 535 (asserting junior college football seasons should not count under the Five-Year Rule); *Boyd*, ECF No. 1 ¶¶ 58–62 (claiming entitlement to a waiver that extended eligibility beyond the "arbitrary" Five-Year Rule); *Bellamy*, ECF No. 1 ¶¶ 38–39, 45–46, 49–50, 52–53, 59 (challenging the Five-Year Rule's inclusion of years spent playing sports at non-NCAA institutions); *Patterson*, ECF No. 1 ¶¶ 61–62, 72–117 (claiming the NCAA arbitrarily limits the amount of seasons an athlete can compete with the Five-Year Rule). That rule is a series of bylaws the NCAA's Division I members have adopted to define who is eligible to play college athletics. Dkt. No. 3, Ex. A art. 12.6. Generally, an athlete may play in four seasons of competition within five years of first enrolling fulltime in a collegiate institution. *Id.* art. 12.6.1. The bylaws detail what seasons and years count towards the limits, and criteria for waivers of the rule's usual application. *Id.* art. 12.6–12.10. Plaintiff's challenge to the Five-Year Rule focuses on its inclusion of seasons played at JUCO and NAIA schools, which he alleges "creates disparities and artificially restricts the career mobility of JUCO and NAIA athletes." *See* Dkt. No. 3 ¶ 98.

### B. The *Patterson* Lawsuit Proposes a Rule 23(b)(2) Injunctive Relief Class

The *Patterson* plaintiffs assert a Sherman Act claim on behalf of themselves and two putative classes:

> The "Injunctive Relief Class" pursuant to Federal Rule 23(b)(2) defined as: All NCAA Division I college athletes who first enrolled in college in the fall of 2022 or beyond who (i) have not taken a redshirt year, and (ii) will have at least one of their five years of eligibility available for the 2026-27 academic year.
>
> The "Lost Opportunities Damages Class" pursuant to Federal Rule 23(b)(3) defined as: All NCAA Division I college athletes who first enrolled in college no earlier than the fall of 2020 and no later than the spring of 2022, who (i) did not take a redshirt year, and (ii) whose four-seasons of eligibility was extinguished by application of NCAA Bylaw 12.6 at the conclusion of the 2023-2024 season (for Spring sports) or 2024-2025 season (for all sports).

*Id.* ¶¶ 118, 119. The *Patterson* plaintiffs seek to permanently enjoin the NCAA from enforcing its

eligibility rules against current and future NCAA Division I college athletes. *See id.* at 55.

The NCAA is currently opposing the *Patterson* plaintiffs' motion for leave to file a second amended complaint. *Id.* ECF Nos. 112, 122, 126. *Patterson* is set for a jury trial on November 9, 2027. *Id.* ECF No. 104.

### C. Plaintiff's Lawsuit Raises the Same Issues as *Patterson*, and He Is Within the Proposed Injunctive Relief Class

After first playing at JUCO and NAIA schools during the 2022–2023 and 2023–2024 seasons, Plaintiff began playing NCAA Division I football at Coastal Carolina University for the 2024-25 season. Dkt. No. 3 ¶ 24. At that time, Plaintiff was required to acknowledge his understanding and agreement to the Bylaws, including the Five-Year Rule. Dkt. No. 3, Ex. A at art 12.5.2.1. Thus, by the time he played his third 2024-25 season, Plaintiff was aware that his two seasons of competition at the NAIA and JUCO levels would count toward his four seasons of competition.

On December 30, 2025, a week after its football season ended and Plaintiff's eligibility expired, Plaintiff's enrolled institution at the time, the University of Nevada, Las Vegas ("UNLV"), submitted to the NCAA a "Legislative Relief Waiver" on Plaintiff's behalf. ECF No. 5 at 95–101. The waiver request did not seek in earnest to restore any eligibility for Plaintiff. Instead, UNLV indicated that it filed the request because "[Plaintiff] would like to exhaust all administrative remedies prior to adding his name to Patterson/Pavia pending litigation." *Id.* at 97. The NCAA denied the waiver request on January 13, 2026. *Id.* at 101.

On January 20, 2026, Plaintiff filed a *pro se* complaint in this Court seeking declaratory and injunctive relief against the NCAA under the Sherman Act that would allow him to "continue competing in collegiate football." Complaint, *Fuller v. NCAA*, No. 2:26-cv-00110 (D. Nev. Jan. 20, 2026), ECF No. 1-1 at 1–2. Plaintiff's motion to proceed *in forma pauperis* was denied and the case was subsequently dismissed on March 30, 2026, after he failed to pay the filing fee. *See* Minute Order, *id.*, ECF No. 10. Plaintiff then retained counsel and filed this lawsuit and accompanying motion for emergency injunctive relief more than six weeks later, on June 29, 2026. Plaintiff alleges the NCAA's application of the Five-Year Rule against him violates the Sherman Act and constitutes breach of contract as well as tortious interference with prospective economic advantage. ECF No. 3 ¶¶ 150–182.

Plaintiff acknowledges the 2024-25 season counts against his four-seasons of eligibility because he played in more than four games for each season. *See* Dkt. No. 3 ¶ 24. He first enrolled in a collegiate institution in 2022 and competed in four full collegiate football seasons, at Graceland University (NAIA), El Camino College (JUCO), Coastal Carolina University (DI), and UNLV (DI). *See* Dkt. No. 3 ¶ 24. Plaintiff's eligibility to play for four seasons under the Five-Year Rule thus expired upon the conclusion of the 2025-26 UNLV football season despite his five-year period including the 2026–2027 academic year. As such, Plaintiff is a member of the putative Injunctive Relief Class in *Patterson*, challenging the same Five-Year Rule, advancing similar legal theories, and seeking the same relief. *Patterson*, ECF No. 1 ¶ 118.

## III. ARGUMENT

### A. The First-to-File Rule Applies to Plaintiff's Lawsuit

Plaintiff is far from the first student-athlete to sue the NCAA seeking to participate in extra seasons of collegiate sports based on the allegedly anticompetitive nature of the NCAA's eligibility rules. The first-to-file rule "permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). "The rule is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013) (citing *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979)). Judicial economy will be served by dismissing this case or transferring it to the Middle District of Tennessee, where several materially similar suits are all currently pending before the same judge. Another court in this Circuit has found transfer appropriate in similar circumstances. *See Manu v. NCAA*, No. 2:25-cv-01956, 2025 WL 3140840 (W.D. Wash. Nov. 10, 2025) (transferring NCAA-eligibility-rules case to Middle District of Tennessee).

In determining whether the first-to-file rule applies, courts analyze three factors: (1) chronology of the lawsuits, (2) similarity of the parties, and (3) similarity of the issues. *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). Although a court may "decline to apply the first-to-file rule in the interests of equity or where the Section 1404(a) balance of convenience

weighs in favor of the later-filed action . . . [t]he Ninth Circuit has cautioned that relaxing the first-to-file rule on the basis of convenience is a determination best left to the court in the first-filed action." *Wallerstein*, 967 F. Supp. 2d at 1293. As this District has previously recognized, the rule "serve[s] the purpose of promoting efficiency well and should not be disregarded lightly." *wedi Corp. v. Hydroblok Grant Int'l Ltd.*, No. 2:22-cv-00457, 2023 WL 2610164, at *2 (D. Nev. Mar. 23, 2023) (quoting *Kohn L. Grp.*, 787 F.3d at 1239). Departures from the rule are thus warranted "only under limited circumstances." *CRU Acquisition Grp., LLC v. Mykey Tech., Inc.*, No. 3:11-CV-05743-RBL, 2012 WL 441293, at *1 (W.D. Wash. Feb. 10, 2012).

Here, Plaintiff's later-filed action involves the same issues and parties as the *Patterson* Class Action currently pending in Tennessee, and Plaintiff is a putative member of the Injunctive Relief Class whose participation is mandatory. No exceptional circumstances warrant a departure from the first to file rule—there is no evidence that the Tennessee Court is an inconvenient forum. Therefore, transfer of this action is appropriate.

**1. Chronology: This Action was Filed After the *Patterson* Class Action**

It is undisputed that Plaintiff filed this lawsuit ten months after the most recent Tennessee Case, which is the *Patterson* Class Action. Plaintiff also sued more than a year after the plaintiff in *Pavia* and months after the plaintiffs in *Boyd* and *Bellamy*. That *Pavia* was filed in the fall of *2024* highlights how much Plaintiff delayed seeking judicial intervention—both lawsuits concern the 2025–2026 season, yet Plaintiff waited until after that season began to sue.

**2. Same Parties: Plaintiff Is a Putative Class Member in the *Patterson* Class Action—and Cannot Opt Out if That Class Is Certified**

The first-to-file rule requires that the parties be "substantially" similar; it "does not require exact identity of the parties." *Kohn L. Grp.*, 787 F.3d at 1240. That standard is satisfied here. On one hand, the NCAA is the sole named defendant in this matter and each of *Pavia*, *Patterson*, and *Boyd*. On the other hand, Plaintiff is a member of the putative class in *Patterson*, and admitted he intended to join the *Pavia* litigation.

When assessing the similarity of the parties in the context of class actions, this District regularly considers putative class members for purposes of the second first-to-file factor. *See Keen v. Omni Limousine*, No. 2:16-cv-01903-JCM-GWF, 2016 WL 6828199, at *2 (D. Nev. Nov. 18, 2016); *Nesbit*

*v. Fornaro*, No. 2:11-cv-00092-PMP-GWF, 2011 WL 1869917, at *2 (D. Nev. Mar. 31, 2011); *see also Clarke v. Providence St. Joseph Health*, No. 2:24-CV-0434-TOR, 2025 WL 1920412, at *2 (E.D. Wash. July 11, 2025) (collecting cases). The same analysis applies regardless of that status of the class action because "if the first to file rule did not apply until after class certification occurred, parties would have likely already expended substantial resources towards pleadings, motions practice, and class discovery." *Clarke*, 2025 WL 1920412, at 2 (citing *Booker v. Am. Honda Motor Co.*, No. 2:20-cv-05166-SVW, 2020 WL 7263538, at *3 (C.D. Cal. Oct. 20, 2020)). "Such a result is inconsistent with 'the policy of the first-to-file rule, which is to maximize judicial economy, consistency, and comity.'" *Id.* (quoting *Kohn L. Grp.*, 787 F.3d at 1240).

Here, Plaintiff is a member of the putative class in *Patterson*. *See Keen*, 2016 WL 6828199, at *2 ("In analyzing the second factor in relation to collective actions, a court should compare the putative classes rather than the named plaintiffs.") (citing *Adoma v. Univ. of Phx., Inc.*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010)); *see also Nesbit*, 2011 WL 1869917, at *2 (holding that consideration of putative classes is appropriate in first-to-file analysis). The *Patterson* Class Action was brought on behalf of an Injunctive Relief Class under Federal Rule 23(b)(2). *Patterson*, ECF No. 1 ¶ 118. Members of a class action that seek injunctive relief may not opt out of the class. *Frank v. United Airlines, Inc.*, 216 F.3d 845, 850 (9th Cir. 2000) ("Because the class was certified under Rule 23(b)(2), plaintiffs could not opt out of the class."); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."). Moreover, although *Pavia* is not a class action, it includes more than a dozen plaintiffs with materially similar claims and an operative scheduling order that explicitly allows for adding additional parties. And Plaintiff admits that he intended to join the *Pavia* litigation as early as December 2025. Thus, the second first-to-file factor weighs in favor of the rule's application.

**3. The Issues Are Substantially Similar.**

As with the second factor, the third factor of the first-to-file rule requires only that the issues are "substantially similar." *wedi Corp.*, 2023 WL 2610164, at *2 (quoting *Kohn L. Grp.*, 787 F.3d at 1240). This third factor "does not require exact identity of the parties." *Id.* "[T]he requirement that

the issues in both actions be 'substantially similar' is satisfied even where different claims are advanced in each action, so long as the 'key dispute' in each action is the same." *Fremont Emergency Servs. (Scherr), Ltd. v. UnitedHealthcare Ins. Co.*, No. 2:22-cv-01118-CDS-BNW, 2023 WL 8556229, at *3 (D. Nev. Dec. 8, 2023) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, 2012 WL 3277222, at *3 (N.D. Cal. Aug. 9, 2012)).

Here, the issues are substantially similar to those raised in *Patterson*, *Pavia*, *Boyd,* and *Bellamy*. All plaintiffs allege the same key dispute—that is, the NCAA eligibility rules as applied to their ability to play in Division I college sports are unlawful for the same reasons (violations of federal antitrust laws and other state laws). *See supra* Section II; *Fremont*, 2023 WL 8556229, at *3. Indeed, collectively these suits encompass aspects of the Five-Year Rule that Plaintiff challenges. *Patterson* challenges the "four years of competition" aspect of the rule, *Pavia* the counting of JUCO seasons toward those four years, and *Boyd* and *Bellamy* challenge counting NAIA seasons. And as a putative class member, Plaintiff is in the same position as the *Patterson* plaintiffs. Additionally, each lawsuit raises Sherman Act claims challenging substantially similar aspects of the Five-Year Rule under substantially similar facts. Plaintiff's assertion of two state-law claims stemming from the same facts does not defeat this element. *See Manu*, 2025 WL 3140840, at *3 (collecting cases) ("Manu's assertion of an additional state law claim does not defeat [the third] element."); *Kohn L. Grp.*, 787 F.3d at 1240 (explaining that for the first-to-file rule to apply under the third factor, the issues in the actions "need not be identical, only substantially similar"). Thus, the second first-to-file factor weighs in favor of the rule's application.

### B. The Court Should Transfer This Matter to the Tennessee Court to Prevent Duplicative Litigation and Promote Judicial Efficiency

The next inquiry is how the first-to-file rule should be applied. "Once a court determines that the first-to-file rule applies, the court may transfer, stay, or dismiss the action." *See Fremont*, 2023 WL 8556229, at *2 (quoting *Alltrade, Inc. v. Uniweld Prods.*, 946 F.2d 622, 623 (9th Cir. 1991)). This Court should transfer this matter and let the Tennessee Court adjudicate. Duplicative merits rulings here are the precise harm the rule prevents. Alternatively, this Court should dismiss this matter without prejudice to allow Plaintiff to join the Tennessee cases, or at minimum, stay this matter pending the

outcome of the Tennessee cases.

The NCAA requests Plaintiff's lawsuit be transferred to a court that is already dealing with similar issues and parties in order to "[e]nsur[e] that the same court rules on the overlapping cases[,]" which "maximizes economy and efficiency by preventing duplicative litigation, restricting the burden on the parties, and avoiding inconsistencies across districts." *wedi Corp.*, 2023 WL 2610164, at *3 (granting a defendant's motion to transfer a case and recognizing that the Nevada District "should not address a controversy that may have already been litigated in [another district]"). Transfer is an appropriate remedy because having a single court hear multiple related cases will avoid the risk of inconsistent determinations. By contrast, "separate adjudication of these cases will not just be judicially inefficient and may lead to conflicting judgments." *See Fremont*, 2023 WL 8556229, at *3.

This is especially true because "[t]he parties and issues are similar, so coordinated treatment would reduce the cost to the parties and the courts." *Packwood v. Cty. of Contra Costa*, No. 3:22-cv-0219-ART-CLB, 2023 WL 2349390, at *4 (D. Nev. Mar. 2, 2023). Most of the circuit judges that have addressed the recent eligibility-related cases against the NCAA have highlighted an extensive factual record is essential to conduct a proper antitrust analysis. *See Fourqurean v. NCAA*, 143 F.4th 859, 870 (7th Cir. 2025) ("We are . . . cognizant that '[w]hether an antitrust violation exists necessarily depends on a careful analysis of market realities.'" (alteration in original) (quoting *NCAA v. Alston*, 594 U.S. 69, 93 (2021))); *Pavia*, 154 F.4th at 418 (Thapar, J., concurring) ("Until [Congress intervenes], judges should tread carefully in this area and insist on a thorough record from which to rule."); *id.* at 419 (Hermandorfer, J., concurring) ("Enabling the parties here to refine their theories and evidence through discovery and final judgment will provide additional information critical to fully assessing the JUCO Rule's soundness in antitrust."). It would waste this Court's resources for the parties to attempt to develop and explore such an extensive factual record here when the Tennessee Court is already undertaking that task in a putative class action encompassing Plaintiff's claim. *See Packwood*, 2023 WL 2349390, at *4 (transferring a case under the first-to-file rule to a district where one judge had been assigned various similar actions and was "thus familiar with this litigation").

Here, like the *Patterson*, *Pavia*, *Boyd*, and *Bellamy* plaintiffs, Plaintiff is seeking to enjoin the NCAA from enforcing its eligibility rules so Plaintiff can play in Division I collegiate sports beyond

his eligibility limit under the Five-Year Rule. The Tennessee Court has developed substantial familiarity with this form of injunctive relief under similar fact patterns and nearly identical legal circumstances and is equipped to determine the best and most efficient way to handle these claims. *Supra* Section II.A. Thus, transferring Plaintiff's action to Tennessee would promote judicial economy, avoid duplicative litigation, and reduce the risk of inconsistent rulings, especially in the temporary restraining order and preliminary injunction context as applied to similarly situated student-athletes. *wedi Corp.*, 2023 WL 2610164, at *3; *Wallerstein*, 967 F. Supp. 2d at 1292; *Church of Scientology*, 611 F.2d at 750.

Alternatively, the rule also independently authorizes dismissal or a stay, neither of which implicates 28 U.S.C. § 1404(a)'s venue limits. In the event the Court decides against transfer, it should stay this matter, especially in light of the Tennessee Court consolidating for discovery purposes. *Patterson*, ECF No. 92; *Pavia*, ECF No. 96; *Boyd*, ECF No. 67; *see Fremont*, 2023 WL 8556229, at *2 (granting a stay under the first-to-file rule because "much of the same evidence that will be adduced in discovery in the Tennessee case will also be relevant and sought here" and "separate adjudication of the[] cases w[ould] not just be judicially inefficient and may lead to conflicting judgments"). Dismissal of this matter would also "serve the purpose of promoting efficiency" so Plaintiff can join the pending Tennessee cases. *wedi*, 2023 WL 2610164, at *2; *see Energy Enhancement Sys., Ltd. Liab. Co. v. Light Sys.*, No. 3:26-cv-00163-MMD-CLB, 2026 WL 926773, at *3 (D. Nev. Apr. 6, 2026) ("[B]ecause this later-filed action involves substantially similar parties and issues, the Court concludes that application of the first-to-file rule is warranted, and dismissal is appropriate."). Furthermore, the NCAA—the sole defendant in this action—is already litigating *Pavia*, *Boyd*, and *Patterson* in the Tennessee Court and does not contest venue there.

## IV. CONCLUSION

WHEREFORE, for the reasons set forth herein, Defendant respectfully requests that this Court GRANT the NCAA's Motion to Transfer to the Middle District of Tennessee.

Respectfully submitted,

Dated: August 10, 2026.

NAYLOR & BRASTER

By: */s/ John M. Naylor*

John M. Naylor
Nevada Bar No. 5435
Kelly M. Scarborough
Nevada Bar No. 16979
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135

*Attorneys for Defendant National Collegiate Athletic Association*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 4(b), I hereby certify that I am an employee of NAYLOR & BRASTER and that on this 10th day of August 2026, I caused the document entitled "**MOTION OF DEFENDANT NCAA TO TRANSFER TO THE MIDDLE DISTRICT OF TENNESSEE**" to be served through the Court's CM/ECF No. system to those persons designated by the parties that have appeared in the matter.

*/s/ Halee A. Mennear*
An Employee of NAYLOR & BRASTER