John M. Naylor
Nevada Bar No. 5435
Kelly M. Scarborough
Nevada Bar No. 16979
NAYLOR & BRASTER
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135
(T) (702) 420-7000
(F) (702) 420-7001
jnaylor@nblawnv.com
kscarborough@nblawnv.com

*Attorneys for Defendant*
*National Collegiate Athletic Association*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| COHEN FULLER,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>Defendant. | Case No. 2:26-CV-01974-APG-BW<br><br>**REPLY BRIEF OF DEFENDANT NCAA IN FURTHER SUPPORT OF TRANSFER TO THE MIDDLE DISTRICT OF TENNESSEE** |

## I. INTRODUCTION

Plaintiff asks this Court to abstain from applying the first-to-file rule based on an emergency of his own invention that is no longer relevant. Plaintiff burdened this Court with a Preliminary Injunction motion at the eleventh hour, and the Court has now denied his motion, ECF No. 48. Adjudicating the remainder of this action in Tennessee alongside the *Patterson v. NCAA*, No. 3:25-cv-00994 (M.D. Tenn. filed Sep. 2, 2025) ("the *Patterson* Class Action"), *Pavia v. NCAA*, No. 3:24-cv-01336 (M.D. Tenn. filed Nov. 8, 2024), *Boyd v. NCAA*, No. 3:25-cv-00729 (M.D. Tenn. filed June 30, 2025) and *Bellamy v. NCAA*, No. 3:25-cv-00750 (M.D. Tenn. filed July 3, 2025) – pending suits in Tennessee seeking injunctive relief just like Plaintiff – would best advance the interest of judicial economy.

## II. ARGUMENT

Plaintiff's opposition advances three arguments: (1) transferring Plaintiff's case will cause prejudice due to delay, (2) the first-to-file rule is discretionary, and (3) Plaintiff's case lacks commonality with the cases already being litigated in Tennessee because he asserts state law claims. Each fails for the reasons set forth below. Plaintiff's opposition does not undermine the core reasons this case should proceed in the Middle District of Tennessee. The Tennessee court is already addressing substantially similar eligibility challenges, is equipped to resolve time-sensitive injunctive requests promptly and can ensure consistent adjudication of overlapping legal and factual issues. Transferring this case will not prejudice Plaintiff. Instead, transferring the case advances judicial economy while avoiding duplicative proceedings and conflicting rulings.

### A. Plaintiff Would Not Be Prejudiced by Transferring the Case to Tennessee.

Plaintiff contends transfer would cause delay and significant prejudice to him. ECF No. 43 at 1-2. But the Court has now denied Plaintiff the preliminary relief he sought. ECF No. 48. To the extent Plaintiff plans to file a *third* motion seeking preliminary relief, transferring Plaintiff's case would not

preclude prompt consideration of injunctive relief by a court already addressing substantially similar issues. Another court in this Circuit rejected the same delay-based objections (with a still-pending motion) when transferring a similar NCAA eligibility dispute, emphasizing that the transferee court could promptly resolve the requested injunctive relief. *See Manu v. NCAA*, No. 2:25-cv-01956, 2025 WL 3140840 at *4 (W.D. Wash. Nov. 10, 2025) (transferring NCAA-eligibility-rules case to Middle District of Tennessee). A detailed chronology of the litigation history is already set out in the NCAA's Motion, but a brief overview of the timeline demonstrates that Plaintiff's emergency is one of his own making and indicates Plaintiff's aversion to transfer is tactical:

- **December 30, 2025**. UNLV submitted to the NCAA a "Legislative Relief Waiver" on Plaintiff's behalf (the "Waiver"), the stated purpose of which was "to exhaust all administrative remedies prior to adding his name to Patterson/Pavia pending litigation." ECF No. 5 at 95-101.
- **January 13, 2026**. The Waiver was denied. *Id.* at 101.
- **January 15, 2026**. The *Patterson* court denied a preliminary injunction motion by "Plaintiffs [who had] played four seasons of [NCAA] Division I football and want[] to play one more season" asserting the NCAA rules "limiting them to four seasons of competition constitute unreasonable restraints on trade in violation of Section 1 of the Sherman Antitrust Act." *Patterson v. NCAA*, No. 3:25-CV-00994, 2026 WL 115417, at *1 (M.D. Tenn. Jan. 15, 2026).
- **January 20, 2026**. Plaintiff filed a pro se complaint in this Court seeking declaratory and injunctive relief against the NCAA under the Sherman Act that would allow him to "continue competing in collegiate football." Complaint, *Fuller v. NCAA*, No. 2:26-cv-00110 (D. Nev. Jan. 20, 2026), ECF No. 1-1 at 1–2.

- **March 30, 2026**. Plaintiff's motion to proceed *in forma pauperis* was denied because he "has gross income of $6,000 each month (i.e., $72,000 annually)," *id.*, ECF No. 8 at 1, and the case was subsequently dismissed on March 30, 2026 because he failed to pay the filing fee, *see* Minute Order, *id.*, ECF No. 10.
- **May 14, 2026**. Plaintiff's counsel contacted the NCAA's counsel concerning Plaintiff and his allegations against the NCAA. Tabor Decl., ECF No. 5 at 92.
- **June 29, 2026**. Plaintiff filed this lawsuit and accompanying motion for emergency injunctive relief. *See* ECF Nos. 3 & 5.
- **July 24, 2026**. The NCAA stated, in its opening sentence of its brief opposing Plaintiff's request for preliminary injunction, "Plaintiff admits that he could have pursued his claims through existing litigation in the Middle District of Tennessee, which is the appropriate venue under the first-to-file rule." ECF No. 22 at 1.
- **July 31, 2026**. Plaintiff disagreed that the matter should be transferred." ECF No. 29 at 2.
- **August 10, 2026**. The NCAA filed its Motion to Transfer. ECF No. 40.
- **August 24, 2026**. Plaintiff filed his opposition to the Motion to Transfer fourteen days later – the maximum time allowed to respond under Nevada Local Rule LR 7-2(b). *See* ECF No. 43.

Plaintiff has fought the NCAA on transferring his case for almost a month. *See* ECF No. 29 at 2; *see also* ECF No. 43. This Court has now denied his preliminary injunction motion. ECF No. 48. Should Plaintiff wish to pursue another such motion, the Tennessee court is presiding over a particularly concentrated group of NCAA eligibility cases and is "well equipped to decide [Plaintiff's] motion promptly." *Manu*, 2025 WL 3140840, at *4. Plaintiff argues that because the *Patterson* Class Action, *Pavia*, *Boyd*, and *Bellamy* have been pending for "significantly longer than the instant case," transfer is not proper on equitable grounds. ECF No. 43 at 13. However, the NCAA eligibility cases in

Tennessee have not languished and have not been repeatedly stayed. In *Pavia*, Mr. Pavia sought a TRO on August 11, 2024, and the Court denied it four days after it was filed. *See Pavia*, ECF Nos. 8, 15. In *Boyd*, the Court denied Boyd's motion for a TRO two days after it was filed. *See Boyd*, ECF Nos. 11, 16. And in *Bellamy*, the Court denied plaintiffs' multiple motions for a TRO and preliminary injunction a little over a month after multiple plaintiffs had sued the NCAA. *See Bellamy*, ECF No. 39.

Indeed, the issue is *not* that Tennessee cases have languished. The issue *for Plaintiff* is that plaintiffs in Tennessee have not received favorable outcomes in those cases. Plaintiffs are not receiving favorable outcomes against the NCAA in eligibility cases because plaintiffs' requests should fail—not because Tennessee is an unavailable or improper forum.

Plaintiff further states that transferring to the Middle District of Tennessee will result in "significant prejudice" to him because Plaintiff resides in Nevada, attends the University of Nevada Las Vegas ("UNLV"), and cares for his one-year-old child. ECF No. 43 at 11–12. Plaintiff also notes he is a college student-athlete facing the "imminent start of the academic and football season." *Id.* at 11. However, Plaintiff's Waiver was filed because "[Plaintiff] would like to exhaust all administrative remedies *prior to adding his name to Patterson/Pavia pending litigation*." ECF No. 5 at 97 (emphasis added). The same factors that Plaintiff contends will now result in "significant prejudice" to him if transferred to Tennessee existed at the time Plaintiff stated he was willing to add his name to the litigation pending in Tennessee.[1]

Plaintiff also attempts to broaden this case to challenge the NCAA's new age-based eligibility system, *see* ECF No. 43 at 5–6, but the Complaint challenges only the Five-Year Rule—the eligibility

---

[1] Plaintiff contends that transferring the lawsuit to Tennessee will inconvenience him because he has a young child in Las Vegas and is actively involved in the child's day-to-day care while simultaneously pursuing his academic and athletic obligations. ECF No. 43 at 11–12. There is also no reason to believe the Tennessee court will mandate Plaintiff's personal appearance without accommodating his travel needs.

rule that applied to Plaintiff for his entire college career. Plaintiff asserts that his claims also challenge "his exclusion for the upcoming 2026-2027 season by way of the 5-in-5 Rule" at issue in *Wisne*. ECF No. 43 at 5–6. But the Complaint contains no allegations to that effect. The *only* mention of the new eligibility model in the Complaint is in support of Plaintiff's argument that the Five-Year Rule "served no legitimate pro-competitive purpose and that less restrictive means clearly existed." *See* ECF No. 3 ¶¶ 146-49. The Court should examine Plaintiff's claims under the facts alleged in his Complaint, which relate exclusively to the Five-Year Rule. *See e.g.*, *Id.* ¶ 2 (describing challenged Bylaws). Further, although Plaintiff commenced this action before *Wisne*, he is part of the *Wisne* class and any age-based eligibility claim should be resolved there.

Plaintiff next argues that transfer is unavailable because this case did not arise in Tennessee and has "no relation" to Tennessee. ECF No. 43 at 4. Plaintiff further argues that 28 U.S.C. § 1404(a) cabins the exercise of this Court's discretion to transfer only to another "district or division where [the lawsuit] might have been brought." ECF No. 43 at 4 (citing *Bozic v. U.S. Dist. Ct.*, 888 F.3d 1048, 1053 (9th Cir. 2018)). The phrase "where it might have been brought" refers solely to districts where Plaintiff could have originally filed suit. *Bozic*, 888 F.3d at 1053 (citing *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)). *Bozic* is not instructive here because Plaintiff already admitted he could have pursued his claims through existing litigation in the Middle District of Tennessee. *See* ECF No. 5 at 97.

**B. The NCAA Would be Prejudiced by Remaining in this Forum.**

Plaintiff contends that the NCAA is "prejudiced in no way whatsoever by remaining in this forum," because it is a "national organization with substantially greater resources and counsel capable of litigating in either forum." ECF No. 43 at 2, 12. That is not true. Plaintiff's claim in this Court is one of over one hundred challenges across the country to the NCAA's eligibility rules. The NCAA incurs significant additional costs to litigate individual cases for individual athletes all over the country. Further, by litigating cases with common questions of law and fact in separate courts, the NCAA risks

inconsistent rulings that create chaos, uncertainty, and hardship for both the NCAA and thousands of NCAA student-athletes.

Plaintiff argues that the NCAA is a national organization with approximately 1,100 four-year colleges and universities, consisting of approximately 350 Division I schools, but simultaneously asks the Court to view his case as so unique to Nevada that cannot be litigated in Tennessee. ECF No. 43 at 12; *see also* ECF No. 3 ¶ 35. Those positions cannot both be true. Plaintiff cannot characterize the NCAA as a national organization and, at the same time, insist his challenge is uniquely local to Nevada. Indeed, of the 12 games scheduled for UNLV football's 2026-2027 season, *six* of those games are scheduled to be played outside the State of Nevada. UNLV, *2026 Football Schedule*, UNLV Rebels, https://unlvrebels.com/sports/football/schedule/2026 (last visited Aug. 31, 2026).

The Ninth Circuit long ago recognized the risk when the legal obligations applicable to the NCAA vary across state lines. "[I]n order for the NCAA to accomplish its goals," the NCAA must apply rules setting eligibility for participation in college athletics "even-handedly and uniformly on a national basis.'" *NCAA v. Miller*, 10 F.3d 633, 638 (9th Cir. 1993). Legal regimes that create different eligibility rules in different states "go[] to the heart of the NCAA and threaten[] to tear that heart out. Consistency among members must exist if an organization of this type is to thrive, or even exist." *Id.* at 640. "[C]hanges at the border of every state would as surely disrupt the NCAA as changes in train length at each state's border would disrupt a railroad." *Id.* That risk is presented when dozens of courts across the country are simultaneously adjudicating overlapping issues with not only possible—but actual—varying results.

**C. Another Court in This Circuit Confronted the Same Transfer Question in a Materially Identical NCAA Eligibility Dispute and Rejected the Very Arguments Fuller Now Presses.**

Plaintiff's opposition reprises the same four arguments that the Western District of Washington rejected in *Manu*: (1) Plaintiff asks this Court to bypass the first-to-file rule to expedite his TRO; (2) Plaintiff argues uncertainty about putative class status and the possibility of opting out; (3) Plaintiff

asserts that additional state-law claims make his case too different for transfer; and (4) Plaintiff emphasizes that first-to-file is discretionary and should be declined here. *See* ECF No. 43 at 2–14. Plaintiff frames those points by highlighting that he will be prejudiced by the transfer and that his case and the claims made are supposedly unique and specific to Nevada. *See id.* at 2, 5–7. However, Plaintiff's objections to transfer are the same objections the *Manu* court addressed and rejected. *See Manu*, 2025 WL 3140840 at *2–4.

The *Manu* court agreed with the NCAA that that the Middle District of Tennessee was well equipped to decide Manu's motion promptly and avoided duplicative and potentially conflicting determinations of the legal issues at play—precisely the judicial-efficiency interests the first-to-file rule protects. *See id.* at *4 (citing *Kinn v. Quaker Oats Co.*, No. C16-1262RSL, 2016 WL 11706919, at *2 (W.D. Wash. Nov. 3, 2016)). The urgency Plaintiff claims exists to resolve his TRO Motion is a product of his delay in bringing this action and, in any event, is no longer a relevant consideration. The original *Pavia* decision was issued on December 18, 2024—nearly *two years ago*. *Pavia v. NCAA*, 760 F. Supp. 3d 527 (M.D. Tenn. 2024), appeal dismissed as moot, 154 F.4th 407 (6th Cir. 2025). Plaintiff's argument about delay is no reason to disregard first-to-file.

Plaintiff's class-membership objection fares no better. In *Manu*, the court recognized that the similarity-of-parties factor encompasses putative class members and concluded that Manu fell within the injunctive-relief class—one without opt-out rights—so uncertainty about certification or a desire to opt out did not defeat transfer. *See Manu*, 2025 WL 3140840 at *2–3.

The same is true of Plaintiff's attempt to avoid transfer by arguing that this lawsuit does not present identical parties or claims to the *Patterson* Class Action, *Pavia*, *Boyd*, and *Bellamy* cases because he asserts state-law theories. ECF No. 43 at 5–6. The court in *Manu* rejected the notion that tacking on a state-law claim renders the actions dissimilar. For the first-to-file rule to apply the issues in the actions "need not be identical, only substantially similar." *Kohn L. Grp., Inc. v. Auto Parts Mfg.*

*Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). The court rejected Manu's same argument and held that his assertion of an additional state law claim did not mean that Manu's issues were dissimilar to the plaintiffs in Tennessee. *See Manu*, 2025 WL 3140840 at *3 (citations omitted). Practically, the first-to-file rule would be thwarted if all a plaintiff needed to do was add a superfluous state law claim or other "unique" and "special" factor on his claims to avoid being transferred under the first-to-file rule.

Finally, the court in *Manu* weighed the familiar first-to-file factors—chronology, similarity of parties, and similarity of issues—and held that "[a]ll three considerations weigh[ed] in favor of applying the first-to-file-rule," notwithstanding Manu's plea for a discretionary exception. *Id.* Plaintiff's discretion-based request repeats that same plea and should be rejected for the same reasons.

In sum, Plaintiff has made the same arguments Manu made, and the Western District of Washington rejected them all in transferring his NCAA eligibility case to the Middle District of Tennessee. This Court should do the same to promote efficiency, avoid inconsistent rulings, and ensure prompt, coordinated resolution of overlapping issues already being addressed in Tennessee.

### D. The NCAA Did Not Take an Inconsistent Position by Citing the Putative Class in This Case but Opposing Class Certification in the *Patterson* Class Action Because Those Are Two Distinct Issues.

Plaintiff argues the NCAA takes an inconsistent position by opposing class certification in the *Patterson* Class Action but asking the Court to transfer Plaintiff's "individual action" to Tennessee based on the anticipated existence of the class. ECF No. 43 at 10. When assessing the similarity of the parties in the context of class actions, this District regularly considers *putative* class members for purposes of the second first-to-file factor. *See Keen v. Omni Limousine*, No. 2:16-cv-01903-JCM-GWF, 2016 WL 6828199, at *2 (D. Nev. Nov. 18, 2016); *Nesbit v. Fornaro*, No. 2:11-cv-00092-PMP-GWF, 2011 WL 1869917, at *1–2 (D. Nev. Mar. 31, 2011); *see also Clarke v. Providence St. Joseph Health*, No. 2:24-CV-0434-TOR, 2025 WL 1920412, at *2 (E.D. Wash. July 11, 2025) (collecting

cases). The same analysis applies regardless of that status of the class action because "if the first to file rule did not apply until after class certification occurred, parties would have likely already expended substantial resources towards pleadings, motions practice, and class discovery." *Clarke*, 2025 WL 1920412, at *2 (citing *Booker v. Am. Honda Motor Co.*, No. 2:20-cv-05166-SVW, 2020 WL 7263538, at *3 (C.D. Cal. Oct. 20, 2020)). "Such a result is inconsistent with 'the policy of the first-to-file rule, which is to maximize judicial economy, consistency, and comity.'" *Id.* (quoting *Kohn L. Grp.*, 787 F.3d at 1240). Accordingly, acknowledging Plaintiff's putative membership in the *Patterson* Class Action injunctive-relief class for purposes of the first-to-file "same parties" analysis—an inquiry courts undertake regardless of certification status—does not contradict the NCAA's separate Rule 23 arguments on whether a class should be certified in the *Patterson* Class Action, and it properly advances the rule's core aims of judicial economy, consistency, and comity.

## III. CONCLUSION

WHEREFORE, for the reasons set forth herein, Defendant respectfully requests that this Court GRANT the NCAA's Motion to Transfer to the Middle District of Tennessee.

Respectfully submitted,

Dated: August 31, 2026.

NAYLOR & BRASTER

By: */s/ John M. Naylor*

John M. Naylor
Nevada Bar No. 5435
Kelly M. Scarborough
Nevada Bar No. 16979
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135

*Attorneys for Defendant National Collegiate Athletic Association*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 4(b), I hereby certify that I am an employee of NAYLOR & BRASTER and that on this 31st day of August 2026, I caused the document entitled "**REPLY BRIEF OF DEFENDANT NCAA IN FURTHER SUPPORT OF TRANSFER TO THE MIDDLE DISTRICT OF TENNESSEE**" to be served through the Court's CM/ECF No. system to those persons designated by the parties that have appeared in the matter.

*/s/ Halee A. Mennear*
An Employee of NAYLOR & BRASTER